**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIAN CARTER,<br><br>Plaintiff,<br><br>v.<br><br>RED BANK BOROUGH, et al.,<br><br>Defendants. | Civil Action No. 18-11537 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Thomas Doremus's ("Defendant") Motion for Summary Judgment. (ECF No. 21.) Plaintiff Brian Carter ("Plaintiff") filed opposition. (ECF No. 24.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth in this Memorandum Opinion, Defendant's Motion is denied.

## I. BACKGROUND[1]

Plaintiff's allegations stem from a traffic stop conducted by Defendant, a Red Bank Borough[2] police officer. (PSMF ¶ 13.) On April 8, 2013, Plaintiff arrived at a stop sign at the intersection of Monmouth Street and Shrewsbury Avenue and proceeded to make a left onto Shrewsbury Avenue. (*Id.* ¶¶ 13, 14.) According to Defendant, when Plaintiff made the left turn at the intersection, Plaintiff pulled up behind and followed the car in front of him too closely for sixty-five feet. (*Id.* ¶¶ 16–17.) Before Defendant could turn left onto Shrewsbury Avenue behind Plaintiff, a truck crossed his path northbound on Shrewsbury and two cars southbound behind Plaintiff's car. (*Id.* ¶ 23.) According to Defendant, Plaintiff subsequently failed to signal when pulling into a parking spot on the right side of Shrewsbury Avenue near the post office. (*Id.* ¶¶ 15, 28.)

While Plaintiff was pulled over in the parking spot, Defendant approached Plaintiff for his credentials. (*Id.* ¶ 31.) Plaintiff, believing the interaction was nothing more than a consensual field inquiry, was alarmed by Defendant's request and asked for an administrator to be called to the scene. (*Id.* ¶ 33.) Defendant then called in his location to central dispatch. (*Id.* ¶ 34.) Within two minutes of asking Plaintiff for his driving credentials, upon the arrival of a backup officer, Defendant forcibly extracted Plaintiff from his vehicle. (*Id.* ¶ 36.)

---

[1] Defendant did not respond to Plaintiff's Counterstatement of Material Facts ("PSMF"). (PSMF, ECF No. 24-1 at *4–17.) Pages preceded by asterisks refer to page numbers on the ECF header.

Under Local Civil Rule 56.1, "facts submitted in [a] statement of material facts which remain uncontested by the opposing party are deemed admitted." *Hill v. Algor*, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000). The Court, accordingly, deems PSMF as undisputed.

[2] The Court previously granted Defendant Red Bank Borough's motion for summary judgment on all counts. *Carter v. Red Bank Borough, et al.*, No. 18-11537, 2019 WL 6699456 (D.N.J. Dec. 9, 2019).

Plaintiff was charged with the following offenses: (1) Following too closely in violation of N.J. Stat. Ann. § 39:4-89; (2) Failure to signal when pulling over to the parking spot in violation of N.J. Stat. Ann. § 39:4-126; (3) Failure to exhibit license in violation of N.J. Stat. Ann. § 39:3-29; (4) Failure to exhibit registration in violation of N.J. Stat. Ann. § 39:3-29; (5) Failure to exhibit insurance in violation of N.J. Stat. Ann. § 39:3-29; and (6) Obstruction of law enforcement by means of "physical interference" in violation of N.J. Stat. Ann. § 2C:29-1a. (*Id.* ¶ 40.)

During the municipal court proceedings, the judge considered Defendant's testimony and viewed a motor vehicle recording ("MVR") from a camera in Defendant's car. (PSMF ¶¶ 46–47.) *See also State v. Carter*, No. A-0853-15T1, 2017 WL 2774073, at *1 (N.J. Super. Ct. App. Div. June 27, 2017).[3] "The judge acquitted defendant of violating N.J. [Stat. Ann.] 39:4–89, following too closely, but convicted him of the other motor vehicle offenses[, including failure to signal at the intersection]." *Carter*, 2017 WL 2774073, at *2.

Plaintiff appealed to the Law Division. (PSMF ¶ 53.) Plaintiff challenged the failure to signal conviction, because Defendant had charged him with failure to signal when pulling over to the parking spot—not when turning at the intersection. (*Id.* ¶¶ 46, 50.) According to Plaintiff, the municipal court's analysis was based upon conduct that was neither observed by Defendant nor relied upon by him as justification for the stop. (*Id.* ¶¶ 48–50.)

The Law Division conducted a trial de novo and similarly reviewed the MVR. (*Id.* ¶¶ 53, 58.) The court concluded that "[Defendant] was not in a position to see how closely [Plaintiff] was following the car in front of him" and that, from the MVR, "two vehicles between the front of [Defendant's] car and the rear of the [Plaintiff's] car precluded the [Defendant] from making any

[3] The Appellate Division's Opinion is also available as Exhibit E to the Gordon Certification. (ECF No. 24-7.)

observation as to whether [Plaintiff] did or did not turn at that point." *Carter*, 2017 WL 2774073, at *3. (internal quotation marks omitted). The judge also "noted that the municipal court judge made no findings regarding [Defendant's] credibility, '[p]robably for good reason,' because the officer 'could[ not] have seen' what he claimed was the reason for stopping [Plaintiff's] car." *Id.* Nonetheless, the court concluded that Plaintiff failed to signal at the intersection and found Plaintiff guilty of the same infractions as the municipal court. (PSMF ¶ 54.) *See also Carter*, 2017 WL 2774073, at *3.

Plaintiff appealed to the Appellate Division. (PSMF ¶ 55.) The Appellate Division reversed the convictions and remanded the matter for a new trial in the municipal court. (*Id.* ¶ 56.) The court first noted that both the municipal court and Law Division concluded Defendant could not have observed Plaintiff following too closely or failing to signal as he pulled to the curb, and instead solely relied upon the MVR in reaching their determinations. (*Id.* ¶¶ 57–58.) As to the failure to signal at the intersection conviction, the Appellate Division found that "there is no authority to support the municipal court and Law Division judges' transmutation of their personal observations of the MVR recording into a reasonable and articulable basis for [Defendant] to stop [Plaintiff's] vehicle." (*Id.* ¶ 58.)

Ultimately, the Appellate Division concluded that, based on the record before the Law Division, the motor vehicle stop was unlawful and that the State failed to prove beyond a reasonable doubt that defendant failed to signal when pulling over to the parking spot. (*Id.*) The court remanded the case for an entry of a judgment of acquittal on the failure to signal charge and for further proceedings on the failure to produce driving credentials charges and obstruction charges. (*Id.* ¶¶ 56, 58.) The Appellate Division stated that Defendant may introduce on remand evidence of his good faith. (*Id.* ¶ 59.)

On remand, the State dismissed the charges. (*Id.* ¶ 60.) Plaintiff then filed the present Complaint against Defendant alleging (i) malicious prosecution in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983, (ii) fabrication of evidence in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, and (iii) malicious prosecution in violation of New Jersey state law. (Compl. 4-8, ECF No. 1.) Defendant moves for summary judgment on all counts.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies what facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (citation omitted).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter," but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. Although the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. The Court must grant summary judgment if the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine

dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted).

## III. DISCUSSION

Defendant moves for summary judgment on all claims. Defendant argues that there is no evidence that Defendant's actions were motivated by malice and that he is entitled to qualified immunity. (*See generally* Def.'s Moving Br., ECF No. 21-3.) The Court addresses each argument in turn.

### A. Malicious Prosecution Claims

Defendant seeks summary judgment on Plaintiff's malicious prosecution claims under the Fourth Amendment and New Jersey law because there is no evidence of malice. (Def.'s Moving Br. 6.) To prove a Fourth Amendment malicious prosecution claim, a plaintiff must show, among other things, that "the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice." *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007). Similarly, to prove malicious prosecution under New Jersey law, the plaintiff must show, *inter alia*, that a criminal proceeding was instituted by the defendant with malice. *Hill v. Algor*, 85 F. Supp. 2d 391, 412 (D.N.J. 2000) (citation omitted).

"Malice in the law is the intentional doing of a wrongful act without just cause or excuse."[4] *Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1120 (N.J. 2009) (citation omitted). Although "[m]alice may be inferred from want of probable cause," "a plaintiff cannot simply point to the absence of probable cause as sufficient proof of the required element of malice." *Id.* (citation omitted). Rather, the plaintiff must "produce at least some extrinsic evidence of malice." *Id.* To

[4] "The interpretation of the common law element of malice in a § 1983 malicious prosecution claim is informed by state law." *Prince v. Aiellos*, No. 09-5429, 2013 WL 6865619, at *6 (D.N.J. Dec. 20, 2013), *aff'd*, 594 F. App'x 742 (3d Cir. 2014).

determine whether Defendant acted with malice, then, the Court asks: (1) whether Defendant had probable cause to institute criminal proceedings against Plaintiff, and (2) whether those acts were actuated by malice. *See id.*

Probable cause exists when, "at the time of the arrest, the facts and circumstances within the officer's knowledge are 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause is a "fluid-concept" and a "determination as to its existence must be based on the totality of the circumstances." *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000). "Generally, the question of probable cause in a section 1983 damage suit is one for the jury. This is particularly true where the probable cause determination rests on credibility conflicts." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (citations and internal quotation marks omitted); *see also Montgomery v. De Simone*, 159 F.3d 120, 125 (3d Cir. 1998) (finding that, in the absence of a probable cause finding, the issue of whether Defendant had probable cause rests entirely upon the credibility of witnesses).

Defendant argues that "he had a reasonable suspicion for the motor vehicle stop" because "he observed the Plaintiff's motor vehicle follow the car in front of it too closely and then pull off to the side of the road without signaling." (Def.'s Moving Br. 6–7.) Defendant argues that, "[c]learly, a police officer . . . has peripheral vision and the ability to turn his head[,] making him capable of observing more than just what is captured on a stationary MVR recording device mounted on a car's dash." (*Id.* at 7.) According to Defendant, "there can be no dispute that Plaintiff's actions once stopped warranted his arrest and subsequent prosecution." (*Id.*)

Although Defendant argues that he saw what he saw, the municipal court and Law Division concluded Defendant could not have observed Plaintiff following too closely or failing to signal

as he pulled to the curb—the alleged reasons for the stop. Moreover, the Appellate Division found that the stop was unlawful. The record also shows that three cars passed Defendant's path as he turned to follow Plaintiff at the intersection, which calls into question Defendant ability to make the observations he alleges. Whether Defendant acted without probable cause in filing the criminal complaint against Plaintiff, then, is a genuine dispute of material fact that turns largely on Defendant's credibility—something that neither the municipal court nor the Law Division considered. Based on the evidence in the record, a reasonable jury could find that Defendant lacked probable cause in filing the criminal complaint against Plaintiff.

As a result, whether Defendant acted with malice remains an open question. Plaintiff argues that "the basis for the stop was entirely fabricated" and "[s]uch fabrication is the definition of malice." (Pl.'s Opp'n Br. 4, 11, ECF No. 24.) Without any proof that Defendant observed what he alleges to have observed and the municipal court and Law Division's contrary findings, a reasonable jury could find that Defendant acted with malice by fabricating the facts underlying the criminal complaint to initiate and proceed with the criminal proceeding against Plaintiff.

**B. <u>Qualified Immunity Defense</u>**

Defendant also argues that summary judgment is appropriate because he is entitled to qualified immunity. (Def.'s Moving Br. 4.) "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, courts must consider: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of a

defendant's alleged misconduct." *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010). "[C]ourts are free to address the two elements in whichever order they deem appropriate." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 235 (2009)).

Although the ultimate determination on qualified immunity rests with the court, the jury nonetheless "determines disputed historical facts material to the qualified immunity question." *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004) (citation omitted). The court in *Curley v. Klem*, 499 F.3d 199, 208 (3d Cir. 2007) explained: while the Supreme Court's instruction that "'[i]mmunity ordinarily should be decided by the court long before trial' [is] . . . well and good when there are no factual issues in a case, . . . often the facts are intensely disputed, and our precedent makes clear that such disputes must be resolved by a jury after a trial." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).

Here, Plaintiff's "right to be free from prosecutions on criminal charges that lack probable cause" was clearly established at the time of his alleged misconduct. *Andrews v. Scuilli*, 853 F.3d 690, 705 (3d Cir. 2017) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). However, there is a genuine dispute as to whether Defendant reasonably believed Plaintiff committed the traffic violations for which he was charged and prosecuted. Defendant contends that "he observed the Plaintiff's motor vehicle follow the car in front of it too closely and then pull off to the side of the road without signaling" (Def.'s Moving Br. 6–7), but he points to nothing on the record—besides his own testimony—to support this argument. Conversely, the record shows that Defendant could not have observed his claimed bases for the stop. Because key historical facts remain in dispute, the Court defers a decision on qualified immunity. "This aspect of Defendant's

motion is[,] therefore[,] denied without prejudice to the re-raising of same at the time of trial." *Prince*, 2013 WL 6865619, at *6.

## IV. CONCLUSION

For these reasons, the Court denies Defendant's Motion for Summary Judgment. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**